JOHN S. LEONARDO
United States Attorney
District of Arizona

DONALD E. CONRAD
Assistant United States Attorney
Arizona State Bar No. 5347
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Facsimile: (602) 514-7662
E-mail: Donald.Conrad@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>1) $16,238.99 Seized from Wells Fargo Bank Account Number XX2758;<br><br>2) $189.44 Seized from Wells Fargo Bank Account Number XX0892;<br><br>3) $4,811.75 Seized from Wells Fargo Bank Account Number XX1531;<br><br>4) $8,006.83 Seized from Wells Fargo Bank Account Number XX5746;<br><br>5) $43.46 Seized from Wells Fargo Bank Account Number XX4887;<br><br>6) $288.56 Seized from Wells Fargo Bank Account Number XX3579,<br><br>7) $119,980.00 Seized from Wells Fargo Safety Deposit Box XX1721;<br><br>8) $4,842.55 Seized from Wells Fargo Bank Account Number XX7693;<br><br>9) $2,163.00 in United States Currency; and<br><br>10) MidFirst Bank Cashier's check no 1196582 in the amount of $76,635.97,<br><br>　　　　　Defendants. | CV 11-02571-PHX-SPL<br><br>**FIRST AMENDED VERIFIED COMPLAINT FOR FORFEITURE <u>IN</u> <u>REM</u>** |

1

Plaintiff, United States of America, by and through its attorneys, JOHN S. LEONARDO, United States Attorney for the District of Arizona, and Donald E. Conrad, Assistant United States Attorney brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a verified complaint for forfeiture *in rem* seeking to forfeit and condemn to the use and benefit of the United States of America the following property: 1) $16,238.99 Seized from Wells Fargo Bank Account Number XX2758; 2) $189.44 Seized from Wells Fargo Bank Account Number XX0892;   3) $4,811.75 Seized from Wells Fargo Bank Account Number XX1531; 4) $8,006.83 Seized from Wells Fargo Bank Account Number XX5746; 5) $43.46 Seized from Wells Fargo Bank Account Number XX4887;  6) $288.56 Seized from Wells Fargo Bank Account Number XX3579, 7) $119,980.00 Seized from Wells Fargo Safety Deposit Box XX1721; 8) $4,842.55 Seized from Wells Fargo Bank Account Number XX7693; [and] 9) $2,163.00 in United States currency; and , <u>10) MidFirst Bank Cashier's check no 1196582 in the amount of $76,635.97,</u> (cumulatively referred to as "defendant currency").

2. This is a civil action *in rem*, seeking the forfeiture of [United States] <u>defendant</u> currency  pursuant to 21 U.S.C. § 881(a)(6) because [the currency] <u>it</u>  represents proceeds of trafficking in controlled substances or was used or intended to be used in exchange for controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq.

3. This is a civil action in rem, seeking the forfeiture of United States currency pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) because the <u>defendant</u> currency constitutes or is derived from proceeds traceable to a violation of, or conspiracy to commit a violation of, 21 U.S.C. § 841 and/or § 846, which are offenses constituting "specified unlawful activity" under 18 U.S.C. § 1956(c)(7) and or 1957 or property traceable to such property.

4. In addition, this is a civil action *in rem*, brought to enforce the provision of 31 U.S.C. § 5317(c)(2) for the forfeiture of property involved in a violation of 31 U.S.C. § 5324(c)(1) and (3) or a conspiracy to commit such a violation, to wit: currency in an amount greater than $10,000 was structured in amounts smaller than $10,000 to avoid the reporting requirements of 31 U.S.C. § 5316(b), which was transported into the United States from or through a place outside the United States and no Cash and Monetary Instrument Report (CMIR) was filed disclosing the information required in 31 U.S.C. § 5316(b).

5. In addition, this is a civil action *in rem*, brought to enforce the provision of 31 U.S.C. § 5317(c) for the forfeiture of property involved in a violation of 31 U.S.C. § 5316(a)(1)(A) or a conspiracy to commit such a violation, to wit: currency in an amount greater than $10,000 at one time was transported from a place in the United States to or through a place outside the United States and no Cash and Monetary Instrument Report (CMIR) was filed disclosing the information required in 31 U.S.C. §5316(b).

6. In addition, this is a civil action *in rem*, brought to enforce the provision of 31 U.S.C. § 5317(c)(2) for the forfeiture of funds involved in structuring activities in violation of 31 U.S.C. § 5324, in order to avoid the requirement to file a Currency Transaction Report pursuant to 31 U.S.C. § 5313, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy.

**THE DEFENDANTS IN REM**

7. The defendants consist of the following property:

   1) $16,238.99 Seized from Wells Fargo Bank Account Number XX2758;
   2) $189.44 Seized from Wells Fargo Bank Account Number XX0892;
   3) $4,811.75 Seized from Wells Fargo Bank Account Number XX1531;
   4) $8,006.83 Seized from Wells Fargo Bank Account Number XX5746;
   5) $43.46 Seized from Wells Fargo Bank Account Number XX4887;
   6) $288.56 Seized from Wells Fargo Bank Account Number XX3579;

    7) $119,980.00 Seized from Wells Fargo Safety Deposit Box XX1721;

    8) $4,842.55 Seized from Wells Fargo Bank Account Number XX7693; and

    9) $2,163.00 in United States currency,

all seized on June 28, 2011, by the Internal Revenue Service ("IRS") and

    <u>10) MidFirst Bank Cashier's check no 1196582 in the amount of $76,635.97,</u>

  8. The [defendants (collectively referred to as, "defendant currency" are] <u>defendant currency is</u> presently in the custody of the United States Marshals Service in Phoenix, Arizona.

## JURISDICTION AND VENUE

  9. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881(a)(6).

  10. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district, and 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this district.

  11. Upon the filing of this complaint, the plaintiff requests that the Clerk issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

  12. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district, and 28 U.S.C. § 1395, because the action accrued in this district and the property is located in this district.

  13. The defendant currency is now, and during the pendency of this action, will be in the jurisdiction of this Court and is located in the District of Arizona.

## FACTS

  14. Beginning in February 2011, the Drug Enforcement Administration ("DEA"), Internal Revenue Service ("IRS") and other law enforcement agencies have conducted an

4

investigation of the drug trafficking and money laundering activities of a large scale methamphetamine and cocaine drug trafficking organization based in the Republic of Mexico and Arizona.

15. The investigation identified Efrain Gustavo Lopez -Gutierrez ("CHOLO") and his associates, Irvin Manuel Coronel ("GORDO") and Michael Navarette-Lopez ("CUATE") as significant members involved in the Phoenix-based drug trafficking organization.

16. From May 3, 2011 - May 18, 2011, law enforcement intercepted wire communications over a cellular telephone utilized by Efrain Gustavo Lopez -Gutierrez (hereafter, "CHOLO").

17. During the monitoring period, numerous telephone conversations were intercepted between Wilfrido Aldana-Cantu ("ARQUI"), an unidentified person known only as "UM2783", CHOLO, GORDO, CUATE, and other drug-trafficking associates during which they discussed what appeared to be drug trafficking activity.

**May 10, 2011**

18. On May 10, 2011, law enforcement intercepted a series of conversations between ARQUI, CHOLO, UM2783, GORDO and CUATE in which they discussed the apparent delivery of $320,000 in drug proceeds to ARQUI.

19. Investigation revealed that on May 10, 2011 CHOLO instructed CUATE to retrieve $320,000 of drug proceeds from a black Honda Accord parked in the garage area of 4719 N. Avenue, Phoenix, Arizona. CHOLO and UM2783 then coordinated the delivery of $320,000 in drug proceeds to ARQUI.

20. Later that same day, ARQUI deposited $9,000 into his personal checking account number XX7693 and $9,200 in joint saving account number XX1060 at the Wells Fargo Branch located at 23405 N Scottsdale Road, Scottsdale, Arizona.

21. On May 11, 2011, ARQUI deposited a total of $80,800 in ten Wells Fargo bank accounts, at various branches in amounts that never exceeded $10,000. All the accounts are associated with ARQUI or a family member.

22. On May ll, 2011, ARQUI also opened and accessed safety deposit box XX721 at the Wells Fargo branch located at 13015 N. Tatum Blvd., Phoenix, Arizona.

23. On May 12, 2011, the funds deposited in accounts XX1060, XX7319, XX4014 were transferred online to ARQUI's personal checking account. The funds deposited to account XX0892 were transferred to account XX3579.

24. Agents identified eleven Wells Fargo bank accounts and the safety deposit box mentioned above that pertain to ARQUI, his father-in-law Oscar Verdugo-Cardenas ("OSCAR"), and another relative, Jose Pedro Cardenas ("JOSE").

25. ARQUI has one sole checking account numbered XX7693; a joint savings account with his wife, Claudia Rosalva Cardenas Marquez (Claudia) numbered XX1060; a joint checking account with Claudia numbered XX7160; a joint checking account with Maria Aurora Cantu de Aldana (Maria), believed to be his mother, numbered XX7319; and a joint savings account with Maria numbered XX4014.

26. Bank records indicate Claudia and Maria are homemakers and have no reported income. ARQUI is a self-employed architect and lists his business phone number as a Mexican phone number.

27. JOSE has control over four accounts at Wells Fargo Bank. One money market savings account numbered XX4887; one checking account numbered XX3579; and two business checking accounts in the name of Sonmex Fund LLC numbered XX0892 and XX2758.

28. OSCAR has control of two joint accounts with his wife Rosalva Cardenas (Rosalva): one joint checking account numbered XX1531 and one joint savings account numbered XX5746.

29. Bank records indicate OSCAR is an attorney with a gross income of $3,000 per month. All but one of the phone numbers listed are Mexican phone numbers. No Social Security number is listed.

30. Investigation revealed that from October 12, 2010 to March 30, 2011, twenty cash deposits totaling $128,050 were made among four accounts on seven occasions. The deposits were made in amounts never exceeding $10,000 dollars and were subsequently transferred to ARQUI's personal checking account.

31. On May 11, 2011, ARQUI wrote a check to OSCAR for $56,000 from his personal checking account.

32. On May 13, 2011, JOSE wrote a check to OSCAR for $36,500 from Account number XX3579.

33. On May 13, 2011, OSCAR deposited both checks to Account number XX1531 to fund the cashier's check used to purchase the residence located at 6505 E. Betty Elyse Lane, Scottsdale Road, Scottsdale, Arizona 85254.

34. Through investigation and surveillance law enforcement determined that ARQUI, OSCAR and JOSE deposited and stored drug proceeds through their various Wells Fargo accounts and safe deposit box and converted those proceeds into real property and transferred a portion of the proceeds into Mexico in an attempt to launder the illicit funds.

35. On May 24, 2011 at 9:54 a.m. two individuals made deposits at two different tellers at the Wells Fargo Branch located at 250 E 4th St., Calexico, California. The deposits were made to ARQUI's personal checking account and account number XX7319 in the amount of $9,000 each.

36. On the same day, ARQUI crossed northbound into the United States from Mexico at the Nogales West Port of Entry at 12:06 p.m. Law Enforcement databases confirmed that ARQUI did not declare the transportation of U.S. currency in excess of $10,000 dollars.

37. Later that day, at the same Calexico, California Wells Fargo branch, two additional deposits of $9,900 each were made to ARQUI's personal checking account and account number XX7160. The cash deposits made to Accounts XX7160 and XX7319 were later transferred to ARQUI's personal checking account.

38. On May 25, 2011, JOSE and OSCAR crossed northbound into the United States from Mexico at the Nogales Port of Entry in the early evening. Law Enforcement databases confirmed that neither JOSE nor OSCAR declared the transportation of U.S. currency in excess of $10,000 dollars.

39. On May 26, 2011, ARQUI made three deposits under $10,000 each, to his personal checking account, account number XX7160 and account number XX7319 totaling $27,050 ($8,550, $9,500, & $9,000) at the Wells Fargo branch located at 13015 N Tatum Blvd, Phoenix, Arizona. ARQUI also accessed his safe deposit box located at the same branch during this same time period.

40. On May 26, 2011, OSCAR purchased Cashier's Check #0631302601 in the amount of $105,595.16 made payable to First American Title for the remaining down payment for the purchase of the residence located at 6505 E. Betty Elyse Lane, Scottsdale, Arizona 85254.

41. Prior to the purchase of the Cashier's Check, OSCAR transferred funds to and from Account number XX5746 netting a remaining co-mingled balance in ARQUI's personal checking account.

42. On May 26, 2011, ARQUI also wrote a $25,000 check made payable to Banco Monex SA which was later endorsed in Mexico.

43. On June 3, 2011, OSCAR and ARQUI crossed northbound into the United States from Mexico at the Nogales Port of Entry in the early evening. Law Enforcement databases confirmed that neither JOSE nor OSCAR declared the transportation of U.S. currency in excess of $10,000 dollars.

44. On June 3, 2011, the United States District Court issued an order authorizing the interception of wire communication over another cellular telephone utilized by CHOLO.

45. Investigation revealed that on June 4, 2011, ARQUI received $56,000 of drug proceeds from CHOLO and CUATE.

46. On the same day investigation revealed ARQUI accessed his safety deposit box located at 13015 N Tatum Blvd, Phoenix, Arizona.

47. On June 10, 2011, ARQUI crossed northbound into the United States from Mexico at the Nogales Port of Entry. Law Enforcement databases confirmed that ARQUI did not declare the transportation of U.S. currency in excess of $10,000 dollars.

48. On June 11, 2011, ARQUI made three deposits in account numbers XX7693, XX7160 and XX7319 $15,000 ($7,000, $3,000, & $5,000) at the Wells Fargo branch located at 14595 N Scottsdale Rd, Scottsdale, Arizona.

49. To summarize the recent Wells Fargo banking activity, from May 10, 2011 through June 11, 2011, $184,415 was deposited and transferred between eleven account associated with ARQUI or one of his family members. The funds ultimately were disposed of through the purchase of Cashier's Checks for the down payment of real property; transfers to Mexico; payment for services; travel, spending, etc.

50. Between May 10, 2011 and June 4, 2011 ARQUI received $376,000 in cash from CHOLO. The source of the money is from the drug trafficking organization under investigation. Only $184,415 was deposited into the eleven various accounts.

51. ARQUI accessed the Wells Fargo Safe deposit box three times. The first time was May 10, 2011, the day he received $320,000, the second occasion was May 26, 2011, and the third time was the same day he received $56,000, June 4, 2011.

**Surveillance and Traffic Stop of ARQUI**

52. On May 26, 2011, at approximately 6:40 p.m., Officers of the Arizona Department of Public Safety stopped ARQUI, driving a white Ford pickup bearing Sonora Mexico license plate UX-62-563, for excessive window tint.

53. ARQUI stated he was a businessman in the construction and real estate business in San Carlos, Sonora.

54. The passenger in the vehicle was identified as Dulce Gallegos-Gaxiola.

55. ARQUI stated he attended the University of Arizona in Tucson and had lived in the US in the past.

56. DPS Officers obtained written consent to search the vehicle from ARQUI.

57. A search of the vehicle by DPS and U.S. Customs revealed no contraband.

58. ARQUI stated he had around $3,000 in U.S. currency which he showed the officers. Gallegos had the currency in a black bag with the rest of the luggage in the back seat of the truck. DPS Officers observed the currency which consisted mostly of $100 and $20 dominations with rubber bands around them.

59. During the search, one of the officers overheard ARQUI tell Gallegos "they don't know our tricks" in Spanish.

60. On June 4, 2011, law enforcement conducted surveilleance of ARQUI while he was at a residence located at 6505 E. Betty Elyse Lane, Scottsdale, Arizona.

61. Agents observed three vehicles with Sonora, Mexico registrations. A White Ford Expedition bearing Sonora Mexico registration XXX2524 was included in the vehicles observed at the residence. This vehicle is registered to Claudia Cardenas, ARQUIs wife. This is also the same vehicle in which ARQUI traveled northbound across the U.S.-Mexico border that same morning.

62. According to the Maricopa County Recorder, Oscar Verdugo Cardenas (ARQUI's father-in-law) purchased the residence located at 6505 Betty Elyse Lane, Scottsdale. The purchase price of the property was approximately $370,000 and the down payment was

approximately $111,000.

63. The down payment consisted of a personal check written by Oscar Verdugo Cardenas for $5,000 on March 31, 2011 from his personal account at Wells Fargo numbered XX1531 and a Cashier's Check purchased from Wells Fargo on May 26, 2011 in the amount of $105,595.16 from account number XX5746.

**Income / Source of Funds**

64. A review of bank records indicate that ARQUI is an architect in Mexico.

65. ARQUI utilizes Social Security number XXX-XX-2349, but is not a United States Citizen. Arizona Department of Economic Security records were queried and no records of wages were located.

66. JOSE utilizes Social Security number XXX-XX-1435, but is not a United States Citizen. Arizona Department of Economic Security records were queried and no records of wages were located.

67. According to bank records OSCAR is an attorney with gross monthly income of $3,000. OSCAR does not have a Social Security Number and is not a United States Citizen.

68. According to Wells Fargo records OSCAR's business phone number is a Mexican phone number.

69. Agents have not identified any legitimate sources of income that would generate large amounts of United States currency in the United States for ARQUI, JOSE, or OSCAR.

## INDICTMENT

70. On September 6, 2011, a Federal Grand Jury returned a Second Superceding indictment charging Wilfrido Aldana-Cantu, aka ARQUI, Oscar Verdugo-Cardenas, aka OSCAR, Jose Pedro Cardenas, aka JOSE, with one count of Conspiracy to Commit Promotional Money Laundering and one count of Conspiracy to Commit Concealment of Money Laundering in violation of 18 U.S.C. § 1956(h).

**Verified Claims**

71. On September 29, 2011, JOSE Pedro Cardenas submitted a seized asset claim to the IRS claiming ownership of Wells Fargo bank account number XX2758 and Wells Fargo Bank Account Number XX0892, held in the name of Sonmex Fund, LLC.

72. On September 29, 2011, Rosalva Cardenas submitted a seized asset claim to the IRS claiming ownership of Wells Fargo bank account number XX1531 and Wells Fargo Bank Account Number XX5746, held in the name of Oscar V. Cardenas and Rosalva Cardenas.

73. On September 29, 2011, OSCAR Verdugo Cardenas submitted a seized asset claim to the IRS claiming ownership of Wells Fargo bank account number XX1531 and Wells Fargo Bank Account Number XX5746, held in the name of Oscar V. Cardenas and Rosalva Cardenas.

74. On September 29, 2011, JOSE Pedro Cardenas submitted a seized asset claim to the IRS claiming ownership of Wells Fargo bank account number XX4487 and Wells Fargo Bank Account Number XX3579, held in the name of Jose P. Cardenas.

75. On September 26, 2011, Wilfrido Aldana "ARQUI" submitted a seized asset claim to the IRS claiming ownership of Wells Fargo bank accounts XX7693, XX1060, XX7160, XX7319, XX4014, XX721 and United States currency in the amount of $2,163.00.

**FIRST CLAIM FOR RELIEF**

76. Based upon the aforementioned facts and circumstances, the defendant currency represents proceeds of trafficking in controlled substances or was used or intended to be used in exchange for controlled substances or were used or intended to be used to facilitate a violation of Title II of the Controlled Substance Act, 21 U.S.C. § 801, *et seq*. and are, therefore, subject to forfeiture to the United States pursuant to 21 U.S.C. § 881 (a)(6).

**SECOND CLAIM FOR RELIEF**

77. Based upon the aforementioned facts and circumstances, the defendant currency represents proceeds that has been involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957 or a conspiracy to commit such a violation and are, therefore,

subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**THIRD CLAIM FOR RELIEF**

78. Based upon the aforementioned facts and circumstances, the defendant currency constitutes proceeds traceable to a violation of, or conspiracy to commit a violation of 21 U.S.C. §§ 841 and/or 846, which are offenses constituting "specified unlawful activity" under 18 U.S.C. § 1956 (c)(7) or 1957, or property traceable to such property and is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**FOURTH CLAIM FOR RELIEF**

79. Based upon the aforementioned facts and circumstances, the above described defendants are property within the jurisdiction of the United States which is subject to forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(A) as currency involved in a violation of 18 U.S.C. § 1956(a)(2)(B)(ii) or a conspiracy to commit such a violation, to wit: currency in an amount greater than $10,000 at one time was received into the United States from or through a place outside the United States to avoid with the intent to evade the currency reporting requirement of 31 U.S.C. § 5316.

**FIFTH CLAIM FOR RELIEF**

80. Based upon the aforementioned facts and circumstances, the above described defendants are subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) for the forfeiture of funds involved in structuring activities in an effort to avoid the requirement to file a Currency Transaction Report pursuant to 31 U.S.C. § 5313, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy in violation of 31 U.S.C. § 5324.

WHEREFORE, the United States of America prays that process of warrant in rem issue for the arrest of the defendants; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED this 20th day of May, 2013.

        JOHN S. LEONARDO
        United States Attorney
        District of Arizona

        S/Donald E. Conrad
        DONALD E. CONRAD
        Assistant United States Attorney

I hereby certify that on May 20, 2013, I filed the foregoing with the Clerk's Office using the ECF system, which electronically transmitted a Notice of Filing to the following (registered or non-CM/ECF) CM/ECF users:

Sean K. McElenney
skmcelenney@bryancave.com

*by: Regina M. Spurlock*

14